UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MARCELA OLVERA-MORALES, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, | ) ) ) | |
| | ) | **Civil Action No.:** |
| Plaintiffs, | ) ) | **02-CV-1589 (NAM-GLS)** |
| v. | ) ) | |
| INTERNATIONAL LABOR MANAGEMENT CORPORATION, INC.; NORTH CAROLINA GROWERS' ASSOCIATION, INC.; and DEL-AL ASSOCIATES, INC., | ) ) ) ) | **BRIEF OF DEFENDANTS ILMC AND NCGA IN SUPPORT OF MOTION TO TRANSFER** |
| Defendants. | ) ) ) | |

Defendants International Labor Management Corporation, Inc. ("ILMC") and North Carolina Growers' Association, Inc. ("NCGA"), pursuant to 29 U.S.C. §1404(a), have moved to transfer this action to the Middle District of North Carolina. As will be demonstrated below, the Middle District of North Carolina is far more convenient for the remaining parties and witnesses.

**Statement of Facts**

The Named Plaintiff is a Mexican national who has worked as a non-immigrant laborer in the United States under the federal H-2B program.  Because she is a *non-immigrant*, she resides in Mexico when she is not on an H-2B work assignment. Affidavit of C. Stanford Eury in Support of Motion to Transfer ("Eury Aff."), ¶4; *see also* Class Action Complaint for Compensatory, Injunctive, and Declaratory Relief (hereinafter "Complaint"), ¶6.

The Named Plaintiff instituted this putative class action on December 23, 2002, alleging that ILMC, NCGA, and Del-Al Associates, Inc. ("Del-Al"), as well as five New York defendants[1], discriminatorily "channeled" female laborers into H-2B positions while "channeling" male laborers into H-2A positions.  Put very simply, H-2B positions are essentially "processing" positions (sorting, grading, packaging), while H-2A positions are "farming" positions (cultivating, planting, harvesting).  The H-2A positions are more lucrative than H-2B positions but entail more physically-demanding labor.  The putative class members, like the Named Plaintiff, are Mexican nationals who are in the United States only when on H-2B assignments. *See, e.g.*, Complaint, ¶2.

ILMC is a for-profit corporation that provides non-immigrant labor (usually from Mexico) under the H-2A and H-2B programs to entities in and outside North Carolina. Eury Aff., ¶3.

---

[1] The New York defendants were Sterling Onions, Inc.; Zappala Farms, LLC; Zappala Holding Company, LLC; Zappala Enterprises, Inc.; and James Zappala. *See* Complaint, ¶¶7-12.  They have all settled with the Named Plaintiff and have been dismissed from the lawsuit.

NCGA is a non-profit corporation that provides non-immigrant labor (usually from Mexico) to approximately 1,050 member growers under the H-2A program. *Id.*, ¶5. NCGA does not deal in H-2B labor. *Id.* All of NCGA's staff employees and its member growers are in the State of North Carolina. *Id.* All workers assigned by NCGA work in North Carolina during the agricultural season and then return to their nations of origin (usually Mexico). *Id.*

C. Stanford "Stan" Eury ("Eury") is President of ILMC and Executive Director of NCGA. *Id.*, ¶1. Eury lives in Vass, North Carolina. *Id.*, ¶2. The headquarters of ILMC and NCGA are both in Vass. *Id.* All of the year-round employees of ILMC and NCGA work at the headquarters in Vass. *Id.*, ¶¶3, 5. All ILMC or NCGA employment records pertaining to the Named Plaintiff and any putative class members are located in Vass. *Id.*, ¶2. Vass is situated in the Middle District of North Carolina. *Id.*

Del-Al is based in Charlottesville, Virginia, approximately a two-hour drive from Greensboro, North Carolina, center of the Middle District of North Carolina. *Id.*, ¶6.

The alleged "channeling" at issue in the case took place in Mexico, according to the Named Plaintiff. For example, in her Charge of Discrimination, she alleges that ILMC, acting as the "hiring agent" for Zappala Farms, Sterling Onions, and others, recruited her in Mexico to work in the United States, and provided her with an H-2B visa. Charge of Discrimination, Charge No. 165A00523, dated April 26, 2000, ¶¶2-4. See also

*id.,* ¶¶7-8 (alleging that ILMC carries on recruitment activities in Mexico under H-2A program).  See also Charge of Discrimination, Charge No. 165A00524, dated April 26, 2000, ¶¶2-4 (same allegations as in ¶¶2-4 of Charge No. 165A00523), ¶¶7-8 (same allegations as in ¶¶7-8 of Charge No. 165A00523); amendment to Charge No. 165A00523, dated March 15, 2002, ¶¶6-8 (same allegations as in ¶¶2-4 of Charge No. 165A00523 but adding NCGA and Del-Al as co-Respondents); ¶¶12-13 (same allegations as in ¶¶7-8 of Charge No. 165A00523 but adding NCGA and Del-Al as co-Respondents); amendment to Charge No. 165A00524, dated March 15, 2002, ¶¶13-15 (same allegations as in ¶¶2-4 of Charge No. 165A00524 but adding NCGA and Del-Al as co-Respondents); ¶¶19-20 (same allegations as in ¶¶7-8 of Charge No. 165A00524 but adding NCGA and Del-Al as co-Respondents).  *See also* Second Amended Charge of Discrimination, Charge No. 165A00524, dated September 30, 2002, ¶¶20-22 (same allegations as in ¶¶2-4 of Charge No. 165A00523 but with NCGA and Del-Al added as co-respondents and ILMC and NCGA added as "employers"); ¶¶26-27 (same allegations in ¶¶19-20 of March 15, 2002 version of Charge No. 165A00524.

In Plaintiffs' Response to Defendants [sic] International Labor Management Corporation, Inc. and North Carolina Growers Association, Inc.'s First Set of Interrogatories, (hereinafter "¶s' Resp. to Defs.' First Set of Interrogatories"), the Named Plaintiff makes clear that all of the alleged unlawful activity still at issue in the case took place in Mexico.  *See* Response No. 1:

    a.     Ms. Olvera-Morales was initially recruited by Florentina del Rios and Ms. Del Rios's husband, both of whom were, on information

and belief, agents of defendants ILMC, NCGA, and Del-Al.   On information and belief, Ms. Olvera-Morales was also recruited by other agents and employees of ILMC, NCGA, and Del-Al, including but not limited to Jorge Del Alamo, C. Stan Eury, Dora, a woman whose surname is currently not known to plaintiffs but who, on information and belief, was an employee or agent of ILMC and NCGA, and others.

*     *     *

b.     Ms. Olvera-Morales initially met with the recruiters Ms. Del Rios and her husband in Actopan, Hidalgo, Mexico and in Taman, San Luis Potosi, Mexico.   She had additional contact with recruiters who, on information and belief, were agents or employees of ILMC, NCGA, and Del-Al in other parts of Mexico, including at or near the border between Mexico and the United States, in Michigan and in New York.   Defendants' recruitment-related activities continued until November 1999, when Ms. Olvera-Morales arrived in New York.   She had additional contact with recruiters who, on information and belief, were agents or employees of ILMC, NCGA, and Del-Al after November 1999.

Mr. and Mrs. Del Rios reside in Mexico.  Eury Aff., ¶ 10.  Mr. Del Alamo resides in Charlottesville, Virginia.  *Id.*  Eury resides in Vass, North Carolina, and "Dora" is Dora Boger, a staff employee of ILMC who resides in Carthage, North Carolina, just a few miles from Vass.  *Id.*

In Response No. 3, the Named Plaintiff alleges that "the Defendants" offered her employment in the United States in June 1999 and an H-2B visa in July 1999.  Plaintiffs' Resp. to Defs'. First Set of Interrogatories.  She alleges that she entered the United States on or about July 27, 1999.  *Id.*, Response No. 4.  She alleges that, until "late July 1999," she lived in the Ecatepec, Estado de Mexico, Mexico.  *Id.*, Response No. 5.  Most significantly, she states that she "was in Mexico at all times between the date Plaintiffs

allege she was recruited by ILMC, NCGA, and Del-Al and the date [July 27, 1999] on which she crossed the border into the United States." *Id.*, Response Nos. 4, 6.

As stated above, the Named Plaintiff has settled with the New York defendants and has dismissed them from this action.  Thus, the only remaining defendants are ILMC, NCGA, and Del-Al.  With respect to these defendants, all of the alleged unlawful activity took place in Mexico.

Thus, the alleged unlawful activity did not take place in New York but in Mexico. The parties and witnesses in the case do not reside in New York but in North Carolina, Virginia, or Mexico.  It is far more convenient to the Defendants and defense witnesses for this action to be transferred to the Middle District of North Carolina.  Moreover, North Carolina is no *less* convenient a venue than the Northern District of New York for the Named Plaintiff and putative plaintiff class.  Indeed, North Carolina may also be more convenient for the plaintiffs than New York.[2]

Based on all of the above, the Defendants respectfully request that the court exercise its discretion under 29 U.S.C. §1404(a) and transfer this action to the Middle District of North Carolina.

---

[2] *See* Affidavit of Christina Tucker, ¶2, Exhs. A and B.  The round-trip air travel time between Monterrey, Mexico and Greensboro, North Carolina is approximately five hours and thirty minutes.  *Id.*, Exh. A.  The round-trip air travel time between Monterrey, Mexico, and Syracuse, New York, is seven and a half to eight hours.  *Id.*, Exh. B.  The air fare to Greensboro is also generally a little less expensive.  *Id.*, Exhs. A and B.

**Legal Authorities**

An action may be transferred, even if venue is proper where it was initially brought, "[f]or the convenience of parties and witnesses, in the interest of justice." 29 U.S.C. §1404(a).  The moving party bears the burden of establishing that transfer is warranted.  *See, e.g., Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218-19 (2d Cir. 1978), *cert. denied*, 440 U.S. 908, 99 S. Ct. 1215, 59 L. Ed.2d 455 (1979).  The moving party must do this by "a clear cut and convincing showing." *Pellegrino v. Stratton Corp.*, 679 F. Supp. 1164, 1166 (N.D.N.Y. 1988).  Although the movant's burden has been described as a "heavy" one, *Gilbert v. Wilson*, 821 F. Supp. 857, 861 (N.D.N.Y. 1993), the Defendants in this case submit that they have more than met that burden.

The Defendants do not dispute that this action could have been brought in the Northern District of New York, and likewise the Named Plaintiff cannot contend that this action could not also have been brought in the Middle District of North Carolina.  Thus, the Court should consider the following factors in deciding whether the Middle District of North Carolina is the more appropriate forum:

> (1)     the plaintiff's original choice of forum, (2) the locus of the operative facts, (3) the convenience and relative means of the parties, (4) the convenience of the witnesses, (5) the availability of process to compel the attendance of witnesses, (6) the location of physical evidence, including documents, (7) the relative familiarity of the courts with the applicable law, and (8) the interests of justice.

*See, e.g., Royal & Sunalliance v. British Airways*, 167 F. Supp.2d 573, 576 (S.D.N.Y. 2001). Almost every factor weighs in favor of the Middle District of North Carolina.

**The Plaintiff's original choice of forum.** Obviously, the Named Plaintiff's choice was the Northern District of New York, and her choice is entitled to some deference. *See, e.g., Royal & Sunalliance*, 167 F. Supp.2d at 576. The logic of this choice has dissipated since the Named Plaintiff dropped the New York Defendants from the lawsuit. Moreover, "a plaintiff's choice of forum is given less weight where the case's operative facts have little connection with the chosen forum." *See TM Claims Service v. KLM Royal Dutch Airlines*, 143 F. Supp.2d 402, 404 (S.D.N.Y. 2001). Because the operative facts (the allegedly discriminatory issuance of the H-2B visa to the Named Plaintiff) took place in either North Carolina or Mexico, the Named Plaintiff's choice of forum is not entitled to any significant weight.

**The locus of the operative facts.** As demonstrated above, this is either North Carolina or Mexico – not New York.

**The convenience and relative means of the parties.** The Middle District of North Carolina is clearly more convenient for the Defendants and arguably more convenient for the Named Plaintiff and putative plaintiff class. *See* Tucker Aff., ¶¶3-5. Because travel from Mexico to the Middle District of North Carolina is faster and less expensive than travel from Mexico to the Northern District of New York, the presumably more-limited means of the Named Plaintiff should not be relevant.

**The convenience of witnesses.** The key witnesses in this case will be the Named Plaintiff and members of the putative plaintiff class – all residents of Mexico; the Del Rios, both from Mexico; Eury, a resident of the Middle District of North Carolina; Del Alamo, a resident of Charlottesville, Virginia; and Dora Boger, a resident of the Middle District of North Carolina. Not a single witness is a resident of New York.

**Ability to compel witness testimony.** There is no difference in the ability of the parties to compel witness testimony in North Carolina versus New York.

**Location of physical evidence.** As stated above, all records relevant to the case are at ILMC or NCGA headquarters in the Middle District of North Carolina, or at Del-Al headquarters in Charlottesville, Virginia. There are no known relevant records in the State of New York.

**Familiarity with governing law.** Obviously, the federal court in New York will be more familiar with the New York Human Rights Law than will the federal court in Greensboro, North Carolina. However, this should not mandate a finding that transfer is inappropriate. A federal court in North Carolina is as capable of reading and interpreting case law on Title VII – a federal statute – as is a federal court in New York.

**The interests of justice.** Generally, when the other factors weigh in favor of transfer, then the court will find that "the interests of justice" are best served by transfer.

*See, e.g., Mitsui Marine and Fire Ins. Co., Ltd. v. Nankai Travel Int'l Co., Inc.*, 245 F. Supp.2d 523, 527 (S.D.N.Y. 2003); *citing TM Claims*, 143 F. Supp.2d at 407. Because virtually all of the factors in this case weigh in favor of transfer, the Defendants submit that the court should therefore find that the interests of justice are best served by transfer.

A federal court in New York granted a motion to transfer in a case that is analogous to the instant case. *See Cento Group, S.P.A. v. OroAmerica, Inc.*, 822 F. Supp. 1058 (S.D.N.Y. 1993). The plaintiff was an Italian jewelry company that sued the defendant in the Southern District of New York for patent infringement. Although the plaintiff's ties with New York were in dispute, the plaintiff at least had office space in New York City, and its attorneys and expert witnesses were based in New York City. The defendant had a New York office but its main office was in California, and it contended that its records were in California. The court found that the plaintiff's principal place of business was Italy, not New York. *Id.,* 822 F. Supp. at 1061. "Since the court cannot transfer the action to Italy, the location of one of the parties in another jurisdiction and the other outside of any jurisdiction tips the balance of convenience in favor of [the California defendant]." *Id.*

With the dismissal of the New York defendants from this action, the case is essentially analogous to the *Cento Group* case. One party – the Named Plaintiff and the putative plaintiff class – is "outside of any jurisdiction," because they are citizens of Mexico. The other parties – ILMC, NCGA, and Del-Al – are "in another jurisdiction" (North Carolina and Virginia). To paraphrase the *Cento Group* court, since the court

10

cannot transfer the action to Mexico, this tips the balance of convenience in favor of the Defendants.

The only remaining individuals in this case who will be inconvenienced by a transfer to the Middle District of North Carolina are the attorneys for the Named Plaintiff and the putative plaintiff class. However, it is well settled that convenience of attorneys is not relevant to a motion to transfer. *See, e.g., National Union Fire Ins. Company of Pittsburgh, PA v. Coric*, 924 F. Supp. 373, 380 (N.D.N.Y. 1993) (denying motion to transfer where proposed transferee forum was only approximately 100 miles away from original forum); *Cento Group, S.P.A. v. OroAmerica, Inc., supra* (granting motion to transfer); *Esposito v. Metro-North Commuter R.R. Co.*, 1992 WL 165821, *7 (N.D.N.Y. 1992) (copy attached as Exhibit A) (granting motion to transfer because operative facts occurred in transferee district, and witnesses and documents were in transferee district); *Scheinbart v. Certain-Teed Products Corp.*, 367 F. Supp. 707, 710 (S.D.N.Y. 1973) (granting motion to transfer because of voluminous records and witnesses in transferee district coupled with minimal inconvenience to plaintiff); *Faigenbaum Machinery, Inc. v. Scott & Williams, Inc.*, 344 F. Supp. 1267, 1272 (S.D.N.Y. 1972) (granting motion to transfer to North Carolina notwithstanding location of plaintiffs' attorneys' offices in New York; finding location of plaintiffs' attorneys to be "of minor significance"); *Unico Industrial Corp. v. S.S. Andros City*, 323 F. Supp. 896, 897 (S.D.N.Y. 1971) (granting motion to transfer where only connection to New York was location of defendant's shipping agent and plaintiffs' attorneys); *Breindel v. Levitt and Sons, Inc.*, 294 F. Supp.

42, 44 (E.D.N.Y. 1968) (denying motion to transfer because plaintiff would be inconvenienced as well as plaintiff's counsel).


**CONCLUSION**


With the dismissal of all the New York defendants from this case, there is no longer any logical reason for this action to be litigated in New York.  Transfer to North Carolina will not inconvenience the plaintiffs or their witnesses, and may actually provide them a small benefit because of the slightly shorter flying time and slightly less expensive air fare to North Carolina.  Meanwhile, a transfer will greatly ease the burden on the defendants and their witnesses – nearly all of whom live in North Carolina and Virginia, and who retain relevant records there.  The North Carolina federal court will be able to interpret the relevant law accurately and fairly.  When the relevant factors are viewed in their totality, it is clear that transfer to North Carolina pursuant to 28 U.S.C. §1404(a) is appropriate.


Dated:  December 20, 2004          CONSTANGY, BROOKS & SMITH, LLC


By:/s/W.R. Loftis, Jr.
     W.R. Loftis, Jr., Esq.
     Robin E. Shea, Esq.
Attorneys for Defendants
ILMC and NCGA
100 N. Cherry Street, Suite 300
Winston-Salem, NC  27101

BOND, SCHOENECK & KING, PLLC


By:/s/Subhash Viswanathan
      Subhash Viswanathan, Esq.
      Bar Roll No. 508463
Local Counsel for Defendants
  ILMC and NCGA
One Lincoln Center
Syracuse, NY 13202
Telephone: (315) 218-8324
E-Mail: viswans@bsk.com

13

1038389.1

# EXHIBIT A TO BRIEF

Westlaw.

1992 WL 165821                                                                    Page 1
1992 WL 165821 (N.D.N.Y.)
**(Cite as: 1992 WL 165821 (N.D.N.Y.))**

**H**
Only the Westlaw citation is currently available.


United States District Court, N.D. New York.

John V. ESPOSITO, Plaintiff,
v.
METRO-NORTH COMMUTER RAILROAD
COMPANY, Defendant.

**No. 91-CV-946.**

July 8, 1992.

Peter L. Maroulis, Poughkeepsie, N.Y., for plaintiff.

Richard K. Bernard Gen. Counsel, Metro-North Commuter Railroad, (C. Sue Barnett, labor counsel), New York City, McNamee, Lockner, Titus & Williams, (Scott A. Barbour, of counsel), Albany, N.Y., for defendant.

*MEMORANDUM-DECISION AND ORDER*

MUNSON, Senior District Judge.

**\*1** Defendant moves to dismiss the amended complaint pursuant to Fed.R.Civ.P. 12(b)(1) and (b)(6), or in the alternative, to transfer the case pursuant to 28 U.S.C. § 1404(a) to the Southern District of New York. Plaintiff cross-moves pursuant to Fed.R.Civ.P. 15(a) for leave to file a second amended complaint. Oral argument was heard on May 26, 1992 in Albany, New York. For the reasons stated below, the court grants in part defendant's motion to dismiss, grants plaintiff's motion for leave to file a second amended complaint, and grants defendant's motion to transfer.

I. BACKGROUND

The complaint in this action alleges violations of plaintiff's civil rights stemming from his termination as chief of police of defendant Metro-North Commuter Railroad Co. ("Metro-North") on August

5, 1988. The stated reason for the termination was plaintiff's failure to notify his supervisor or the President of Metro-North, Peter Stangl, of the existence of a videotape involving Metro-North police officers. The videotape in question, entitled "Buba on Patrol," shows seven white, on-duty Metro-North police officers patrolling in Grand Central Station in 1983. One of the officers is nude except for his hat (with badge), gunbelt, tie, and boots. Other officers are shown mocking a black, homeless person and making racial slurs.

According to plaintiff, he first learned of the existence of the videotape in 1985 from Metro-North Police Captain Dean Evans. He immediately notified Vice President of Operations Don Nelson, Director of Labor Relations Joseph Meloney, and Director of Claims William Fish. Plaintiff allegedly told Mr. Meloney that he wanted to discipline the officers involved, but according to Meloney, that was impossible because union rules require charges to be brought within thirty days of the date that Metro-North management learns of the offending conduct. Because Captain Evans (a management employee) had known of the tape's contents for over two years, plaintiff allegedly was told that it was too late to act.

About three years later, on August 3, 1988, the videotape was aired in the New York City area. It was thereafter aired nationwide, as well as reported widely in the print media. On August 5, 1988, the date of plaintiff's termination, he was on suspension because of his indictment and arrest on July 13, 1988 for allegedly selling police reports generated by the NYSPIN computer system to private investigators. All of the charges were eventually (in 1990) resolved in plaintiff's favor.

The termination of plaintiff received widespread news coverage in the New York City area. Immediately after terminating plaintiff, Metro-North informed the news media in a televised press conference that plaintiff's employment had been terminated because his failure to notify superiors of the existence of the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1992 WL 165821
1992 WL 165821 (N.D.N.Y.)
(Cite as: 1992 WL 165821 (N.D.N.Y.))

Page 2

videotape was an "inexcusable error in judgment." Proposed Second Amended Complaint, Exhibit ("Exh.") A attached to Document ("Doc.") 19, at ¶ 16; Defendant's Memorandum of Law, Doc. 13, at 3. As a result of these comments, plaintiff alleges that he has been unable to find comparable employment.

**\*2** The present action, which was originally brought in Supreme Court, Ulster County, was removed to federal court on August 21, 1991. On September 9, 1991, defendant moved to dismiss the complaint for failure to state a claim, or in the alternative, to transfer the case to the Southern District of New York. In response, plaintiff filed an amended complaint as of right, dropping two defendants, altering/adding various factual allegations, and setting forth three causes of action. The first alleges deprivation of plaintiff's "liberty" interest in violation of 42 U.S.C. § 1983, while the second and third causes of action allege deprivation of plaintiff's "property" interests. Defendant subsequently withdrew its motion without prejudice. Defendant now renews its motion to dismiss the amended complaint, or in the alternative, transfer the case to the Southern District of New York. Plaintiff cross-moves for leave to file a second amended complaint, deleting the second and third causes of action and adding factual allegations to the remaining "liberty" interest claim.

II. DISCUSSION

Defendant moves to dismiss plaintiff's amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Plaintiff does not oppose dismissal of the second and third causes of action in the amended complaint, which allege deprivation of his property interests in violation of 42 U.S.C. § 1983. Because this portion of defendant's motion is unopposed, the court grants defendant's motion to dismiss to the extent that plaintiff's second and third causes of action in his amended complaint are dismissed.

Before addressing defendant's motion as it relates to the remaining § 1983 claim, the court will consider whether plaintiff is entitled to amend his complaint. Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading "shall be freely given when justice so requires," *see* 3

Moore's Federal Practice ¶ 15.08[4], at 15-65 (2d ed.1991), and it is rare that such leave should be denied. *See Foman v. Davis,* 371 U.S. 178, 182 (1962). In reviewing a motion for leave to amend, the district court may consider several factors, including undue influence, bad faith or dilatory motive on the part of the movant, undue prejudice to the non-moving party, and futility of the amendment. *Foman,* 371 U.S. at 182. An amended complaint is considered futile if, even with the amendment, it cannot survive a motion to dismiss. *Freeman v. Marine Midland Bank,* 494 F.2d 1334, 1338 (2d Cir.1974).

Hence, the court must examine the object of plaintiff's amendment before ruling on his motion. The due process clause of the United States Constitution protects against arbitrary deprivation of one's property and liberty interests. A state's action in discharging an employee may implicate the employee's constitutionally protected liberty interest if the discharge imposed on him "a stigma or other disability" that forecloses other employment opportunities. *Board of Regents v. Roth,* 408 U.S. 564, 573 (1972). In order to establish the liability of a defendant in such an action, plaintiff must prove: (1) that defendant made false charges against him in connection with the termination of his employment, *Codd v. Velger,* 429 U.S. 624, 628 (1977); *Baden v. Koch,* 799 F.2d 825, 830 (2d Cir.1986); (2) that defendant published those false charges, *Bishop v. Wood,* 426 U.S. 341, 348 (1978); (3) that defendant "improperly refused to grant [plaintiff] a post-removal opportunity to refute the false charges that led to his removal," *Baden,* 799 F.2d at 830; and (4) that, as a result of his discharge, plaintiff has suffered a "stigma or other disability that forecloses other employment opportunities" or drastically impairs his ability to secure a position comparable to the one he had held. *Roth,* 408 U.S. at 573; *Huntley v. Community School Board,* 543 F.2d 979, 985-86 (2d Cir.1976), *cert. denied,* 430 U.S. 929 (1977).

**\*3** The issue before this court is whether plaintiff's proposed second amended complaint contains factual allegations sufficient to satisfy these standards of recovery. *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 123 (2d Cir.1991) ("When the plaintiff has submitted a proposed

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1992 WL 165821                                                                                      Page 3
1992 WL 165821 (N.D.N.Y.)
(Cite as: 1992 WL 165821 (N.D.N.Y.))

amended complaint, the district judge may review that pleading for adequacy and need not allow its filing if it does not state a claim upon which relief can be granted."). In evaluating the pleading, the court should not dismiss the complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Ricciuti,* 941 F.2d at 123 (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). This principle should be applied with particular strictness when the complaint charges a violation of plaintiff's civil rights. *See Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991). The court must accept the complaint's well-pleaded allegations of fact as true, together with such reasonable inferences as may be drawn in the pleader's favor. *Frazier v. Coughlin,* 850 F.2d 129, 129 (2d Cir.1988).

Defendant contends that plaintiff has failed to adequately plead three of the four elements necessary to allege a claim under § 1983 for deprivation of his liberty interest. First, defendant contends that the proposed second amended complaint fails to allege that defendant made false charges against plaintiff in connection with his termination. Both parties agree that plaintiff was fired as chief of police of defendant Metro-North for the stated reason that his failure to inform either his supervisor or the president of Metro-North of the existence of the videotape was an "inexcusable error in judgment." Proposed Second Amended Complaint, Exh. A attached to Doc. 19, at ¶ 16; Defendant's Memorandum of Law, Doc. 13, at 3. Defendant contends that plaintiff, by his own admission, had only one immediate supervisor, namely the Vice President of Operations, Don Nelson. That being the case, defendant asserts that plaintiff must specifically allege in his complaint that he informed either Mr. Nelson or Mr. Stangl of the existence of the videotape to make out a § 1983 liberty interest claim.

A cursory review of plaintiff's proposed second amended complaint reveals that it does contain such an allegation. Paragraph 17 of the proposed complaint asserts that Stangl's statement concerning the failure of plaintiff to notify Metro-North officials of the existence of the videotape was untrue, and that plaintiff notified his supervisors, including Don Nelson, Joseph Meloney, and

William Fish, in 1985 about the videotape. Proposed Second Amended Complaint, Exh. A attached to Doc. 19, at ¶ 17.

In response to these assertions, defendant contends that plaintiff has acted in "bad faith" in amending his complaint to include factual allegations which would defeat the motion to dismiss. Defendant points out that the initial complaint in this action alleged that plaintiff told "two directors and two vice presidents" of the existence of the videotape. Exh. A attached to Doc. 1, at ¶ 19. The amended complaint alleges that plaintiff informed his "supervisors" about the videotape. Doc. 8, at ¶ 17. Now, the proposed second amended complaint alleges that plaintiff told three specific individuals, including a vice president and two directors, of the existence of the videotape. Exh. A attached to Doc. 19, at ¶ 17.

*4 The court cannot find, based merely on the differing factual allegations contained in the three complaints, that plaintiff has exercised bad faith in attempting to amend his complaint a second time. Each version of the complaint either directly or indirectly, albeit ambiguously, alleges that plaintiff told Don Nelson, the Vice President of Operations, about the videotape. Therefore, the court concludes that plaintiff's second amended complaint has satisfactorily alleged facts to comply with the first element of a § 1983 liberty interest violation.

Turning to the second necessary element for a § 1983 claim, namely that defendant published the false charges, defendant acknowledges that the proposed second amended complaint contains such an allegation. As such, the second element of proof is satisfied.

The third element that must be pled to make out a § 1983 liberty interest claim is that defendant "improperly refused to grant [plaintiff] a post-removal opportunity to refute the false charges that led to his removal." *Baden,* 799 F.2d at 830. Implicit in this showing, according to defendant, is the requirement that plaintiff allege that he requested a "name clearing hearing" after he was terminated. To support this conclusion, defendant relies on the Second Circuit's decision in *Baden,* 799 F.2d at 825. The language which apparently supports defendant's argument states that "in order

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1992 WL 165821                                                                                           Page 4
1992 WL 165821 (N.D.N.Y.)
(Cite as: 1992 WL 165821 (N.D.N.Y.))

to succeed on [a] liberty interest claim, [plaintiff] must also prove that [defendant] improperly refused to grant him a post-removal opportunity to refute the false charges that led to his removal." *Id.* at 830 . Defendant also cites two cases from the Fifth Circuit which specifically hold that a plaintiff must request a name clearing hearing in order to recover under § 1983 for deprivation of one's liberty interest. *See Rosenstein v. City of Dallas,* 876 F.2d 392, 396 (5th Cir.1989); *Campos v. Guillot,* 743 F.2d 1123, 1126 (5th Cir.1984). Because the proposed second amended complaint does not contain an allegation that plaintiff affirmatively requested a post-termination name clearing hearing, defendant contends that the court should deny plaintiff's motion for leave to amend.

Plaintiff, on the other hand, contends that it was defendant's responsibility, not his, to provide either a pre- or post-termination name clearing hearing. In any event, plaintiff contends that it is premature on a motion to dismiss to determine whether he was required to request the name clearing hearing or whether the defendant was obligated to offer one. Because this determination is fact-intensive and relates to the issue of what process is due, plaintiff contends that it cannot be properly decided at this stage of the proceeding. The court agrees.

At least in this circuit, the court is not persuaded that a plaintiff must show that he requested a post-termination name clearing hearing in order to recover under § 1983 for deprivation of his liberty interest. The language relied on by defendant in *Baden* is at best ambiguous on the issue of whether plaintiff must request the hearing or whether defendant must offer one. [FN1] And while the cases cited from the Fifth Circuit clearly dictate that a plaintiff bringing suit in that circuit must affirmatively request a name clearing hearing to allege a § 1983 claim, those cases are not binding on this court. In the absence of a clear mandate from the Second Circuit that a plaintiff is required to request a name clearing hearing prior to bringing suit under § 1983 for deprivation of his liberty interest, this court will not prohibit plaintiff from amending his complaint for failing to so allege.

**\*5** The fourth and final allegation that must be contained in plaintiff's proposed second amended complaint is that the statement accompanying plaintiff's termination imposed upon him a stigma which foreclosed other employment opportunities or drastically impaired his ability to secure a comparable supervisory position. *Roth,* 408 U.S. at 573; *Huntley,* 543 F.2d at 985. Plaintiff's proposed second amended complaint alleges that plaintiff was stigmatized by the publication of false reasons for his termination and that the false allegation created substantial obstacles for obtaining further law enforcement employment. Exh. A attached to Doc. 19, at ¶ 22. Defendant argues that such generalized allegations, absent specific incidents in which plaintiff was denied comparable employment, are insufficient to satisfy the fourth element of the § 1983 liberty interest test. According to defendant, the court cannot infer that the statement was stigmatizing. Defendant also points out that the post-termination statement did not accuse plaintiff of incompetence, dishonesty, or moral turpitude.

Plaintiff concedes that, on its face, the statement made by Stangl upon his termination does not appear to be stigmatizing. However, when considered in the context in which it was made, plaintiff contends that it was particularly stigmatizing. Specifically, the videotape was known to the public to be highly offensive, racially discriminatory, and was the subject of heated community attention. Plaintiff also points out that the publication of the false charge against him was often reported by the media in conjunction with his arrest and indictment for alleged misuse of the NYSPIN computer system. According to plaintiff, the stigmatizing affect was cumulative and devastating.

In response to this last argument, defendant argues that by alleging that several factors led to his stigmatization, plaintiff has conceded that Stangl's statement was not the cause of the harm suffered by plaintiff. According to defendant, there must be a *direct* causal relationship between the allegedly stigmatizing statement and the resulting harm. *See, e.g., Huntley,* 543 F.2d at 985; *Gonzalez v. Leonard,* 497 F.Supp. 1058, 1072 (D.Conn.1980).

The court concludes that, in the context in which Stangl's allegation was made, plaintiff could prove that the allegation implied that he either failed to appreciate the seriousness of the situation or that he

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1992 WL 165821
1992 WL 165821 (N.D.N.Y.)
(Cite as: 1992 WL 165821 (N.D.N.Y.))

Page 5

somehow condoned it. In either case, a reasonable factfinder could conclude that the implication impugned his good name and created a stigma which impaired his chances for future employment in law enforcement. *See Watson v. Sexton,* 755 F.Supp. 583, 592 (S.D.N.Y.1991) (court inferred that plaintiff was stigmatized by employer's post-termination statement that plaintiff refused to submit to a urinalysis); *Diehl v. Albany County School District,* 694 F.Supp. 1534, 1538 (D.Wy.1988) (section 1983 plaintiff "is entitled to all reasonable inferences from the evidence"). It is unnecessary at this stage of the proceedings for plaintiff to cite specific instances in which he lost employment opportunities as a result of the stigmatizing statement.

**\*6** The court further concludes that plaintiff has satisfied his burden at this stage of the proceedings of alleging a causal relationship between the allegedly stigmatizing statement and the resulting harm. The two cases cited by defendant in support of its argument that there must be a *direct* causal relationship between the allegedly stigmatizing statement and the resulting harm are inapposite to the case at bar. *Huntley* involved a claim by an employee that his employer deprived him of his *property* interest in violation of § 1983, not his liberty interest as claimed in this action. *Huntley,* 543 F.2d at 984. Further, the court in *Huntley* never stated that a plaintiff is required to prove direct causation in order to recover under § 1983 for a liberty interest violation; rather, in that case the plaintiff merely alleged that his denial of future employment was a direct result of post-termination public statements. *Id.* at 985. In addition to *Huntley,* the *Gonzalez* case also lacks relevance to the case at bar because it involved claims under the first amendment and not under the due process clause. *Gonzalez,* 497 F.Supp. at 1072. In sum, plaintiff has satisfied the last element necessary to allege a claim under § 1983 for deprivation of his constitutionally-protected liberty interest. As a result, plaintiff's motion for leave to file a second amended complaint is granted and the court accepts the new complaint as being filed and served on the date of this order. In light of this ruling, the court does not reach defendant's motion to dismiss as it relates to the remaining cause of action in plaintiff's amended complaint.

Defendant next moves to transfer this action to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). That statute provides:
  For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

The threshold question in a motion to transfer pursuant to § 1404(a) is whether the action could have been brought in the district to which transfer is sought. *Arrow Electronics, Inc. v. Ducommun Inc.,* 724 F.Supp. 264, 265 (S.D.N.Y.1989). Where, as here, the jurisdiction of the court is based on the existence of a federal question, the action may be brought in any district where the court has personal jurisdiction. Both the Northern District of New York and the Southern District of New York are appropriate forums for this action, since both parties reside in New York State.

The court must next determine which forum is more convenient. The case law governing a motion to transfer was thoroughly reviewed by District Judge Neil P. McCurn in *Pellegrino v. Stratton Corp.,* 679 F.Supp. 1164 (N.D.N.Y.1988). The court stated:
  A motion to transfer is addressed to the sound discretion of the court. It is well settled that the burden is on the defendant, when it is the moving party, to establish that there should be a change of venue. A discretionary transfer under § 1404(a) will not be granted absent a clear cut and convincing showing by defendant that the balance of convenience weighs strongly in favor of the transferee court.
  **\*7** The factors relevant to the determination of whether this action should be transferred ... include: the convenience to parties; the convenience of witnesses; the relative ease of access to sources of proof; the availability of process to compel attendance of unwilling witnesses; the cost of obtaining willing witnesses; practical problems that make trial of a case easy, expeditious, and inexpensive; and the interests of justice.
  Further, in this Circuit, when a party seeks to transfer based on convenience of witnesses pursuant to § 1404(a), he must clearly specify the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

1992 WL 165821                                                                    Page 6
1992 WL 165821 (N.D.N.Y.)
**(Cite as: 1992 WL 165821 (N.D.N.Y.))**

key witnesses to be called and must make a general statement of their testimony. That is so because convenience to the witnesses is a very important factor. In addition to the factors listed above, the relative financial hardship on the litigants and their respective abilities to prosecute or defend an action in a particular forum are legitimate factors to consider. The consideration of comparative calendar conditions is also relevant. Finally, the plaintiff's choice of forum is an additional consideration.

*Pellegrino,* 679 F.Supp. at 1166-67 (citations omitted); *see also Aquatic Amusement Associates, Ltd. v. Walt Disney World Co.,* 734 F.Supp. 54, 56 (N.D.N.Y.1990).

Consideration of the factors set forth above indicates that defendant has met its heavy burden of proof justifying a transfer. Although plaintiff's choice of forum is normally entitled to considerable weight, that choice is given less weight where, as here, the case's operative facts have little or no connection with the transferor forum. *National Union Fire Insurance Co. of Pittsburgh v. Landry,* 677 F.Supp. 704, 709 (S.D.N.Y.1988). It would clearly be more convenient for defendant as well as the potential witnesses to transfer this case to the Southern District. Most, if not all, of the likely witnesses live and work in the New York City area. Further, most of the documentary evidence will necessarily be in the possession of defendant at its office located in the Southern District. Also, it is undisputed that the events at issue in this case took place in the Southern District. Although it is true that this court has the power to subpoena the necessary witnesses and documents, this fact alone does not lead the court to conclude that transfer is unwarranted in this case.

Plaintiff contends that although his attorney works in the Southern District, it would be more convenient for counsel to travel to Albany than to New York City. However, it is well-settled that inconvenience to counsel is not a relevant consideration in a motion to transfer. *Friedland v. Holiday Inns, Inc.,* 1989 Westlaw 101942 (S.D.N.Y. Aug. 30, 1989). Additionally, although plaintiff resides in Ulster County in the Northern District, his residence is only slightly more distant from the courthouse in the Southern District than

from the courthouse in this district. Although there might be more time and expense involved in commuting to the Southern District, such a factor is not determinative. *Zalutsky, Pinski & Di Giacomo, Ltd. v. Kleinman,* 747 F.Supp. 457, 462 (N.D.Ill.1990) (if the expense to plaintiff were controlling, "*no* section 1404(a) motion could ever be granted") (emphasis in original); *see also Pall Corp. v. Bently Laboratories Inc.,* 523 F.Supp. 450, 453 (D.Del.1981) ("Undoubtedly, there would be some additional expense in travelling to [another district], but the difference in such expense ... would be insignificant compared to the overall costs of such litigation wherever tried").

**\*8** Finally, the court is not persuaded by plaintiff's argument that the calendar in the Northern District is *far* less congested than in the Southern District. Given the current state of this court's docket, the court cannot conclude that plaintiff would secure a more expeditious resolution of his claims in this district than in the Southern District. For all of these reasons, defendant's request to transfer this case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a) is granted.

### III. CONCLUSION

In sum, the second and third causes of action in plaintiff's amended complaint are dismissed. Plaintiff's motion for leave to file a second amended complaint regarding the remaining cause of action is granted. Finally, defendant's motion to transfer this case to the Southern District of New York is granted. The clerk of the court is directed to immediately transfer this case to the Southern District of New York for all future proceedings.

It is So Ordered

> FN1. It is possible for plaintiff to "prove that [defendant] improperly refused to grant him a post-removal opportunity to refute the false charges that led to his removal" without requiring plaintiff to request a name clearing hearing. *Baden,* 799 F.2d at 830.

1992 WL 165821 (N.D.N.Y.)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.